# 2014-1493

## In The
# United States Court Of Appeals
## For The Federal Circuit

## P.R.S. MEDITERRANEAN LTD.,

*Appellant,*

## v.

## REYNOLDS CONSUMER PRODUCTS, INC.,

*Appellee.*

**Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Opposition No. 91/189,669.**

———————————

## BRIEF OF APPELLEE

———————————

**Daniel H. Shulman**
**REYNOLDS GROUP HOLDINGS LTD.**
**1900 West Field Court**
**Lake Forest, IL  60045**
**(847) 482-2587**
**dshulman@pactiv.com**

*Counsel for Appellee*

*GibsonMoore Appellate Services, LLC*
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# CERTIFICATE OF INTEREST

Counsel for the Appellee, Reynolds Presto Products Inc. (formerly Reynolds Consumer Products, Inc.), certifies the following (use "None" if applicable; use extra sheets if necessary):

1.   The full name of every party or amicus represented by me is:

     **Reynolds Presto Products Inc.**

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

     **None**

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

     **Reynolds Group Holdings Inc.**

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

     **James Donoian, McCarter & English, LLP**
     **Daniel H. Shulman, Reynolds Group Holdings Ltd.**


August 29, 2014                    /s/ Daniel H. Shulman
                                   Daniel H. Shulman

                                   *Counsel for Appellee*

i

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST..........................................................i

TABLE OF CONTENTS ................................................................ii

TABLE OF AUTHORITIES.............................................................v

STATEMENT OF RELATED CASES................................................ix

ISSUE PRESENTED .....................................................................1

RESPONSIVE STATEMENT OF FACTS AND
    STATEMENT OF THE CASE ....................................................1

SUMMARY OF THE ARGUMENTS ................................................4

ARGUMENT .................................................................................8

    I.    Standard Of Review ......................................................8

    II.    Substantial Evidence Supports The TTAB's Findings
        On Each Of The Relevant *DuPont* Factors Such That
        Refusal To Register NEOWEB Was Proper Based On
        A Likelihood Of Confusion With The Senior Mark,
        GEOWEB.................................................................10

        A.    Substantial Evidence Supports The TTAB's
            Findings That GEOWEB And NEOWEB Are
            Similar (First *DuPont* Factor) ...............................12

            1.    The Marks Are Still Strikingly Similar
                Despite The Single Letter Change From
                "G"EOWEB To "N"EOWEB...........................13

2.    The TTAB Properly Found NEOWEB And GEOWEB Similar Despite PRS's Dissection Approach ....................................16

   a.    The TTAB Considered The Commonality Of The –WEB Portions Of The Marks And Still Found Evidence Of Similarity...........................16

   b.    The TTAB Properly Considered Evidence That The NEO- Prefix Creates, Rather Than Dispels, An Association Between The Marks ...........19

3.    PRS's Marketing Statement "Formerly GEOWEB" Does Not Dispel Confusion As To Source, Affiliation Or Sponsorship...........21

B.    The Goods Described In The NEOWEB Application Are Legally Identical To Presto's GEOWEB Product (Second *DuPont* Factor)............24

   1.    PRS's Actual Product Formulation Is Irrelevant.....................................................25

   2.    Even If PRS's "Superior Polymer" Argument Mattered, Substantial Evidence Exists To Show PRS Sold NEOWEB Identical To The GEOWEB Product ..............28

C.    Sophistication Of Purchasers (Fourth *DuPont* Factor) Is, At Best, Neutral In This Case ...............28

D.    The Wide Renown Of Presto's GEOWEB Mark (Fifth *DuPont* Factor) Supports A Likelihood Of Confusion ...........................................................30

E.    Presto's Registered And Incontestable GEOWEB Trademark Has Conceptual Strength (Sixth *DuPont* Factor) ...........................................32

F.    Evidence Of Actual Confusion (Seventh *DuPont* Factor) Also Supports A Likelihood Of Confusion ...........................................................37

1.    PRS Stipulated To The Admissibility Of The E-mail And Therefore Waived Its Hearsay Objection........................................38

2.    The E-Mail Demonstrates Actual Confusion As Defined In The Lanham Act ....40

III.    Upon Balancing The Relevant *DuPont* Factors, This Court Should Find A Likelihood Of Confusion And Affirm The TTAB .........................................................42

CONCLUSION ...............................................................................45

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*AMF Inc. v. American Leisure Products, Inc.,*
474 F.2d 1403 (C.C.P.A. 1973) ...............................................13

*Blodgett v. Commissioner of Internal Revenue,*
394 F.3d 1030 (8th Cir. 2005) ...........................................38-39

*Century 21 Real Estate Corp. v. Century Life of America,*
970 F.2d 874 (Fed. Cir. 1992) .............................................27

*Champagne Louis Roerder, S.A. v. Delicato Vineyards,*
148 F.3d 1373 (Fed. Cir. 1998) ...........................................44

*Coach Servs., Inc. v. Triumph Learning LLC,*
668 F.3d 1356 (Fed. Cir. 2012) ............................... 12, 16, 40

*Consolo v. Federal Maritime Com.,*
383 U.S. 607 (1966) ..............................................................9

*Contour Chair-Lounge Co. v. Englander Co.,*
324 F.2d 186 (C.C.P.A. 1963) ..............................................33

*Daddy's Junky Music Stores, Inc. v.*
*Big Daddy's Family Music Center,*
109 F.3d 275 (6th Cir. 1997) .........................................29, 44

*Delaware Valley Floral Croup, Inc. v. Shaw Rose Nets, LLC,*
597 F.3d 1374 (Fed. Cir. 2010) .......................................9, 10

*Esenwah v. Ashcroft,*
378 F.3d 763 (8th Cir. 2004) ................................................9

*Esso Standard Oil Co. v. Bigelow-Clark, Inc.,*
266 F.2d 804 (C.C.P.A. 1959) ..............................................15

*In re Bayer Aktiengesellschaft,*
   488 F.3d 960 (Fed. Cir. 2007) ...............................................15

*In re Davey Prods. Pty,*
   2009 WL 2420527,
   92 U.S.P.Q.2d 1198 (T.T.A.B. Aug. 7, 2009).....................13-14

*In re Dixie Restaurants, Inc.,*
   105 F.3d 1405 (Fed. Cir. 1997) ...........................................33

*In re DuPont DeNemours & Co.,*
   476 F.2d 1357 (C.C.P.A. 1973) ....................................*passim*

*In re Helene Curtis Industries, Inc.,*
   305 F.2d 492 (C.C.P.A. 1962)............................ 14, 15, 16, 17

*In re Loew's Theatres, Inc.,*
   769 F.3d 764 (Fed. Cir. 1985) ........................................17-18

*In re Shell Oil Co.,*
   992 F.2d 1204 (Fed. Cir. 1993) ...........................................41

*J.C. Hall Co. v. Hallmark Cards, Inc.,*
   340 F.2d 960 (C.C.P.A. 1965).......................................42, 44

*Kassbaum v. Steppenwolf Prods., Inc.,*
   236 F.3d 487 (9th Cir. 2000)................................................23

*Kellogg Co. v. Pack'em Enters., Inc.,*
   951 F.2d 330 (Fed. Cir. 1991) .............................................44

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,*
   424 F.3d 1229 (Fed. Cir. 2005) .....................................21, 23

*Nautilus Group, Inc. v. ICON Health and Fitness, Inc.,*
   372 F.3d 1330 (Fed. Cir. 2004) .....................................34, 35

*New Kids on the Block v. News America Pub., Inc.,*
   971 F.2d 302 (9th Cir. 1992)...............................................22

*Nikon Inc. v. Ikon Corp.*,
    987 F.2d 91 (2d Cir. 1993) ...................................................15

*Octocom Sys., Inc. v. Houston Computer Sys., Inc.*,
    918 F.2d 937 (Fed. Cir. 1990) .......................................25, 26

*Palm Bay Imports, Inc. v.*
*Veuve Clicquot Ponsardin Maison Fondee En 1772*,
    396 F.3d 1369 (Fed. Cir. 2005) .............................................8

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985) ...............................................................33

*Pizzeria Uno Corp. v. Temple*,
    747 F.2d 1522 (4th Cir. 1984) ...............................................35

*Polymer Corp. v. Dayco Corp.*,
    324 F.2d 1019 (C.C.P.A. 1963) ..............................................35

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
    840 F.2d 1565 (Fed. Cir. 1988) ...............................................9

*Shen Mfg. Co. v. Ritz Hotel Ltd.*,
    393 F.3d 1238 (Fed. Cir. 2004) ......................................10, 11

*South Corp. v. U.S.*,
    690 F.2d 1368 (Fed. Cir. 1982) ......................................13, 17

*Sterling Drug, Inc. v. Sebring*,
    515 F.2d 1128 (C.C.P.A. 1975) ..............................................41

*The Wooster Brush Co. v. Prager Brush Co.*,
    231 U.S.P.Q. 316 (T.T.A.B. 1986) .........................................17

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
    295 F.3d 623 (6th Cir. 2002) .........................................29, 44

*U.S. v. Mezzanatto*,
    513 U.S. 196 (1995) ...............................................................39

*Vornado, Inc. v. Breuer Electric Mfg. Co.,*
   390 F.2d 724 (C.C.P.A. 1968) ................................................15

*Wincharger Corp. v. Rinco, Inc.,*
   297 F.2d 261 (C.C.P.A. 1962) ........................................29, 44

**STATUTES:**

15 U.S.C. § 1052(d) .................................................... 7, 38, 40, 41

15 U.S.C. § 1125(a)(1)(A) ........................................................7, 41

15 U.S.C. § 1127.........................................................................32

**OTHER:**

4 McCarthy on Trademarks and Unfair Competition
   § 24:6 (4th ed. 2014) ..............................................................41

## STATEMENT OF RELATED CASES

There are no related appeals in any United States court. No other cases are known to counsel to be pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal.

**ISSUE PRESENTED**

For ten years, PRS Mediterranean Ltd. ("PRS") was a licensee of Reynolds Presto Products Inc.'s ("Presto's") thirty-year-old trademark, GEOWEB, for cellular confinement systems. Shortly after termination of that license, PRS filed an application for registration of the trademark NEOWEB for use with a "new" and "different" version of Presto's GEOWEB product. Presto opposed based on a likelihood of confusion with GEOWEB, and the Trademark Trial and Appeal Board ("TTAB") sustained the opposition. Were the TTAB's factual findings on the *DuPont* likelihood of confusion factors that (a) the goods, trade channels and class of customers were identical; (b) the marks were strikingly similar; and (c) that Presto's GEOWEB mark was a widely known and established brand, supported by substantial evidence such that refusal of PRS's registration of NEOWEB was proper?

**RESPONSIVE STATEMENT OF FACTS AND STATEMENT OF THE CASE**

Presto provides the additional matters to PRS's Statement of Facts:

PRS filed application number 77/248,825 ("the '825 application") for registration of NEOWEB in International Class 19 for:

> Non metallic building materials, namely, three-dimensional polymeric cells, cellular confinement systems, and expandable plastic webbing sheets all for road base and for ground support used for construction of roads and for prevention of ground erosion; plastic articles for reinforcing geotechnical-reinforced materials for use in building and construction; materials, namely, sand, gravel, crushed stone, graded aggregate, recycled asphalt, crushed concrete, native soil, fly ash, quarry waste in the nature of fine crushed stone, earth, soil and concrete, earth and soil for use in road building and civil engineering construction; polymeric webbing, and sheets constructed from plastic, all for road base and ground support, for building roads and for civil engineering construction and for the prevention of erosion of roads and the like structures; pavements and pavement materials, namely, sand, gravel, ballast, recycled concrete, recycled asphalt, crushed stone, quarry waste in the nature of fine crushed stone, earth, soil and concrete

(A00011-12.) The description of goods in the '825 application requires only that the product be "polymeric" without reference to any specific type of polymer or performance characteristic. (*Id.*)

2

The products described in PRS's '825 application, and those marketed by Presto under its registered trademark, GEOWEB, are commonly referred to as geocells, with the root *–cells* being in recognition of the product's common description as a "cellular confinement system." (A03680; A00011-12.) In contrast, the root "web" means different things. (A03803.) PRS founder and Chairman, Oded Erez, testified that "web" is "suggestive" of the shape of the material when the product is opened. (A04313.) Mr. Erez further testified that PRS chose NEOWEB as its mark instead of NEOCELL because –cell would be descriptive, while –web is "more suggestive." (A04526-27.)

While PRS sells its NEOWEB product using its trademarked NEOLOY polymer, a patented polymer that PRS claims is superior to the industry-standard high density polyethylene (HDPE) used in most geocells, PRS has also sold NEOWEB made of standard HDPE that has only "minute" differences from the material used by Presto in its GEOWEB products. (A03694-96; A03724; A03730-31.) In some marketing materials, PRS claimed the products were "identical." (A00321; A00324; A00327; A00330; A03730-31.)

Presto opposed PRS's application for registration of NEOWEB based on its two registrations for its own mark, GEOWEB: the word mark, GEOWEB, U.S. Reg. No. 1,351,682; and the mark and logo,

, U.S. Reg. No. 3,699,433. (A00012-13.) PRS has not filed any counterclaims to challenge the validity of either of Presto's GEOWEB trademarks.

## SUMMARY OF THE ARGUMENTS

Substantial evidence supports the TTAB's findings on the *DuPont* factors and, therefore, the TTAB's conclusion that PRS's mark NEOWEB would likely confuse the public into thinking that PRS's *identical goods* sold in *identical channels* to *identical purchasers* was merely the "newer" version of its former licensor's, Presto's, GEOWEB product. Instead of contesting the balancing of the *DuPont* factors performed by the TTAB (which this Court would review *de novo*), PRS instead argues on appeal – now for the third time – the underlying facts it presented to the TTAB. But, this Court's review is under the "substantial evidence" standard. Thanks to PRS's complete presentation of the evidence to the TTAB once, and then its request that the TTAB reconsider its decision based on

evidence PRS believed the TTAB missed the first time, the TTAB certainly had before it substantial evidence to support its conclusions. On the record here, there is no basis for this Court to reverse.

The facts presented by both parties and considered by the TTAB amply support a finding of likelihood of confusion under the *DuPont* factors, and PRS's arguments to the contrary are not credible.

*First*, NEOWEB is strikingly similar to Presto's senior, incontestable, registered trademark, GEOWEB. PRS argues that the U.S. Patent and Trademark Office has previously registered other marks having only a single letter difference from a prior registered mark (citing only a few examples), extrapolating therefrom that a single letter difference is enough to avoid confusing similarity on the facts of *this* case before the Court. But, this is not such a case. Closely analogous and more prevalent case law supports the obvious conclusion that a change of a single letter is highly unlikely to alleviate confusion.

*Second*, PRS agrees with Presto that both NEOWEB and GEOWEB are "likely to be perceived as *two coalesced terms*"

(emphasis added), but then hinges much of its argument on dissecting the marks. That analysis is severely flawed, and PRS's primary argument demonstrates why. PRS argues that a consumer would immediately recognize the prefix GEO- as referring to "earth," "ground" or "soil," but that same consumer would recognize NEO- as meaning "new" or "different," thereby eliminating possible confusion. However, "new" and "different" (unlike "earth," "ground" or "soil") are necessarily and linguistically words of *comparison*, and therefore necessarily imply a relationship. Thus, the mark NEOWEB evokes a question to a consumer of the relationship between NEOWEB and what came before: "New" compared to what? "Different" compared to what? Substantial evidence supports the TTAB's conclusion that consumers would answer those questions with reference to the obvious mark that NEOWEB evokes, *i.e.*, GEOWEB.

*Third*, to the extent PRS's use of NEOWEB in the marketplace is at all relevant to the opposition proceeding, its use actually foments confusion. PRS relies on a single case to support the theory that its use of "formerly" in its marketing statements, *i.e.*, that NEOWEB is "formerly GEOWEB," adequately informs consumers of

6

a difference as to source. That case, however, involved an instance where the statement specifically differentiated *source*. PRS's statement says nothing about source, but states merely that the *product* is different. Having different *products*, however, is not inconsistent with (and utterly fails to mitigate confusion from) a belief that there is, as specified by the Lanham Act, an "affiliation, connection, or association...as to the origin, sponsorship, or approval" of the two goods. 15 U.S.C. § 1125(a)(1)(A).

*Fourth*, PRS wholly fails to consider the full scope of protection afforded by the Lanham Act when it argues the lack of any actual confusion in this case. The record contains an e-mail from a customer stating "we assumed that the neoweb was the next generation Geocell, based on GEOWEB," and asking, of the GEOWEB and NEOWEB products, "[i]s there a relation between PRS and Presto" and to clarify the "[d]ifference between GEOWEB and Neoweb." PRS incredulously states "[n]o actual confusion is present," arguing that the writer clearly knew PRS and Presto were separate companies. However, the Lanham Act looks to confusion as to "affiliation, connection, or association." The e-mail plainly evidences confusion as to "affiliation, connection, or association."

After considering all of the evidence PRS could muster, the TTAB refused to register NEOWEB. PRS cannot claim that the TTAB missed any evidence – not after having given the TTAB a second bite at the apple – but merely that the TTAB should have found differently. This Court is bound by the substantial evidence standard, and arguments that merely ask for reweighing evidence are not sufficient to warrant reversal under that standard. The TTAB's decision should be affirmed.

## ARGUMENT

### I.    Standard Of Review

This Court gives *de novo* review to the ultimate conclusion of likelihood of confusion based on balancing of the relevant ones of the thirteen likelihood of confusion factors identified in *In re DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973). *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371 (Fed. Cir. 2005). Each of the factual underpinnings, *i.e.*, the individual *DuPont* factors, however, is reviewed for substantial evidence. *Id.* Evidence is substantial if "a reasonable person might find that the evidentiary record supports the agency's conclusion." *Id.* Substantial evidence is "something

8

less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Com.*, 383 U.S. 607, 620 (1966).

This Court also reviews denials of motions for reconsideration under an abuse of discretion standard. *Delaware Valley Floral Croup, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1384 (Fed. Cir. 2010). Abuse of discretion occurs where the lower tribunal misunderstands or misapplies the relevant law, or makes clearly erroneous findings of fact. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1572 (Fed. Cir. 1988). The abuse of discretion standard recognizes the heightened burden an appellant must overcome when the agency has reviewed the same evidence twice. *See Esenwah v. Ashcroft*, 378 F.3d 763, 765 (8th Cir. 2004). Reconsideration may be appropriate where the tribunal below "has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension....Such problems rarely arise and the motion to reconsider should be

9

equally rare." *Delaware Valley*, 597 F.3d at 1384 (internal quotation marks omitted).

## II. Substantial Evidence Supports The TTAB's Findings On Each Of The Relevant *DuPont* Factors Such That Refusal To Register NEOWEB Was Proper Based On A Likelihood Of Confusion With The Senior Mark, GEOWEB

The TTAB carefully analyzed each of the relevant likelihood of confusion factors required under *In re DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973) and found substantial evidence to support likelihood of confusion between NEOWEB and GEOWEB. In its original decision, the TTAB focused on the following *DuPont* factors:[1] (1) similarity of the marks; (2) similarity of the goods as described in the application; (3) similarity of the channels of trade;[2] (4) sophistication of the purchasers; (5) renown of the prior mark (*i.e.*, GEOWEB) (otherwise known as "commercial strength"); (6) nature of marks similar to GEOWEB on similar goods (otherwise

---

[1] Neither the TTAB nor this Court is required to consider *every* *DuPont* factor. It need only consider those it considers relevant. *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241 (Fed. Cir. 2004).

[2] PRS did not present any argument on this factor in its opening brief and, therefore, does not contest this factor on appeal.

known as "conceptual strength"); and (13) allegations of bad faith.[3]

(A00037-44.) Upon reconsideration, the TTAB *again* considered the

following factors: (1) similarity of the marks; (2) similarity of the

goods; (5) renown of the GEOWEB mark ("commercial strength");

and (6) nature of marks similar to GEOWEB ("conceptual strength").

(A00048-53.) Of *all* of those factors, the TTAB found *only one* which

favored PRS: factor (4), sophistication of purchasers:

> These factors, going in favor of a finding of
> likelihood of confusion, outweigh that which
> goes in applicant's favor, namely the care with
> which these goods will be purchased by fairly
> sophisticated professionals, and hence, we find
> that confusion is likely between opposer's
> GEOWEB marks and applicant's NEOWEB
> mark.

(A00044.)

PRS requests this Court to reweigh the evidence for yet a third

time and hopes for a different conclusion. Every one of its

arguments is without merit.

---

[3]    The TTAB found neither party's allegations of bad faith
persuasive and did not mention this factor at all when balancing
the relevant *DuPont* factors in its conclusion. (A00042-44.) PRS
argues this factor in its brief (PRS Br., 38-40), but inasmuch as the
TTAB gave it no apparent weight and found likelihood of confusion
based on substantial evidence in support of the other factors,
Presto need not address this factor. *Shen Mfg.*, 393 F.3d at 1241
(only relevant *DuPont* factors need to be considered).

### A.    Substantial Evidence Supports The TTAB's Findings That GEOWEB And NEOWEB Are Similar (First *DuPont* Factor)

PRS argues, incredulously, that NEOWEB and GEOWEB are not similar marks. It makes three arguments in support of this position. *First*, PRS offers that its change of a single letter is significant. That assertion is palpably absurd, especially given the context here in which the TTAB determined that the prefix NEO-, which PRS repeatedly argues means "new" or "different," produces "an almost intuitive connection to the earlier product" and "works to create a close association" between the two marks. (A00041.) *Second*, PRS argues that the marks may be dissected into component parts, and once the identical portion (*i.e.*, -WEB) is ignored, the difference between NEO- and GEO- is patent. However, as PRS admits in its brief (PRS Br., 22), "the two marks are likely to be perceived as two coalesced terms." This admission reinforces the rule that a mark must be considered *in its entirety. Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012) ("It is well-established that it is improper to dissect a mark, and that marks must be viewed in their entireties."). *Third*, PRS makes the legally irrelevant – and factually wrong – argument that its use

12

in the marketplace of the phrase "formerly GEOWEB" readily

informs consumers that PRS and Presto have no affiliation. In

reality, all PRS's marketing statement does is convey to the market

that NEOWEB is a next generation of a related product, GEOWEB –

the precise message desired by PRS.

### 1. The Marks Are Still Strikingly Similar Despite The Single Letter Change From "G"EOWEB To "N"EOWEB

PRS argues that the TTAB "[did] not consider whether a one-

letter difference can be sufficient to distinguish the marks." (PRS

Br., 24.) In support of that specious argument, it cites two

instances of concurrent registrations for trademarks that differ by a

single letter, SONY/PONY and MEAD/SMEAD. (*Id.*) The TTAB

properly took no note of prior arguably confusing registrations. *AMF

Inc. v. American Leisure Products, Inc.*, 474 F.2d 1403, 1406

(C.C.P.A. 1973) ("nor should the existence on the register of

confusingly similar marks aid an applicant to register another likely

to cause confusion, mistake or to deceive");[4] *see also In re Davey

Prods. Pty*, 2009 WL 2420527, at *11, 92 U.S.P.Q.2d 1198, 1206

---

[4]    Holdings of the Court of Customs and Patent Appeals are binding precedent on this Court. *South Corp. v. U.S.*, 690 F.2d 1368, 1371 (Fed. Cir. 1982) (*en banc*).

(T.T.A.B. Aug. 7, 2009) ("However, it is settled that the fact that there already may be two confusingly similar marks co-existing on the Register and owned by different owners, which arguably should not have registered over each other, does not relieve the Board of its duty to determine the registrability of the applicant's mark on the record currently before it, nor does it justify the addition to the Register of what may be yet another confusingly similar mark.").

Besides, the TTAB plainly considered the effect of the "one letter" difference and found that, in this case, the marks were *still* strikingly similar. (A00040) ("As to appearance, these two marks are identical except for the first letter (GEOWEB versus NEOWEB). They are also strikingly similar in sound."). Certainly, no more substantial evidence exists than a direct comparison of the sight and sound of two nearly identical, rhyming words. The TTAB's finding was not only supported by the obvious similarity, but amply supported by case law that stands for the unremarkable proposition that a single letter difference is unlikely to alleviate confusion.

*In re Helene Curtis Industries, Inc.*, 305 F.2d 492 (C.C.P.A. 1962) is particular instructive. In that case, the applicant sought to register BEAUTY NET for hair spray, and was opposed by the owner

14

of BEAUTY SET for identical goods. *Helene Curtis*, 305 F.2d at 493.
The TTAB refused registration, and on appeal, the applicant made
the identical arguments PRS makes here: the difference of a single
letter was sufficient, many third party registrations used the word
"SET" in relation to hair care products (just as here PRS argues that
the prefix GEO- is widespread), and the common word "BEAUTY"
should be ignored (just as PRS here argues that –WEB should be
dissected out of the analysis). The Court of Customs and Patent
Appeals found none of those arguments persuasive. *Id.* at 493-94;
*see also In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964-65 (Fed.
Cir. 2007) (ASPIRINA sufficiently similar to ASPIRIN to be
considered descriptive); *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94-95
(2d Cir. 1993) (NIKON and IKON confusingly similar); *Vornado, Inc.
v. Breuer Electric Mfg. Co.*, 390 F.2d 724, 727 (C.C.P.A. 1968)
(TORNADO and VORNADO confusingly similar); *Esso Standard Oil
Co. v. Bigelow-Clark, Inc.*, 266 F.2d 804, 808 (C.C.P.A. 1959) (PARM
and PARMO confusingly similar).

In this case, the TTAB's finding that the single letter change
did not dispel confusion was supported by substantial evidence.

### 2.    The TTAB Properly Found NEOWEB And GEOWEB Similar Despite PRS's Dissection Approach

The TTAB followed the law against dissecting the subject marks and found the marks to be strikingly similar. PRS advocates for an approach that is contrary to basic law that "it is improper to dissect a mark, and that marks must be viewed in their entireties." *Coach Services*, 668 F.3d at 1368. Consequently, PRS argues (1) the –WEB portions of the mark are common enough to be ignored completely, and (2) the remaining NEO- and GEO- portions create a significant distinction. Not surprisingly, PRS' argument does not cite any case law to support this approach. (PRS Br., 23-25.) Neither argument has merit.

### a.    The TTAB Considered The Commonality Of The –WEB Portions Of The Marks And Still Found Evidence Of Similarity

PRS would have the Court ignore the –WEB portion of the marks because it is a common word in the industry, but this Court clearly rejected that approach in *Helene Curtis*. In that case, the Court deconstructed the marks at issue, BEAUTY SET and BEAUTY NET into their constituent parts, recognized that each (*i.e.*,

BEAUTY, NET and SET) was a common word, and found such

deconstruction to be neither helpful nor proper:

> While asking us to approve the registration of
> its mark "BEAUTY NET" as a good trademark,
> appellant would also like to have us ignore the
> word "Beauty," which is the prominent part of
> it, because it "is understood as primarily
> describing or suggesting a hoped for effect of
> the goods" and focus our attention on the
> words "Net" and "Set," which are different. We
> might as well be asked to ignore the last-
> mentioned words for the same reason.
> Obviously all three words are common words
> and common components of trademarks for
> cosmetics but the only thing that matters on
> the likelihood of confusion issue before us is
> the marks as a whole and the effect they would
> have if simultaneously used in the
> marketplace on the goods named in the
> application and in the reference registration,
> respectively.

*Helene Curtis*, 305 F.2d at 494. The Court's analysis applies with

equal force to an attempted dissection of NEO-, GEO- and –WEB.[5]

---

[5]    PRS essentially repeats the same "deconstruction" argument
when addressing the Fifth *DuPont* factor (commercial strength).
(PRS Br., 32-33.) There, PRS cites a decision from the TTAB
involving POLY FLO and POLY GLO. (*Id.*) That case, *The Wooster
Brush Co. v. Prager Brush Co.*, 231 U.S.P.Q. 316 (T.T.A.B. 1986),
inasmuch as it emanates from the TTAB however, is not binding on
this Court. *Helene Curtis* is not only more persuasive given its
detailed analysis, it is binding precedent on this Court. *Compare
South Corp.*, 690 F.2d at 1371 (C.C.P.A. decisions are binding on
this Court), *with In re Loew's Theatres, Inc.*, 769 F.3d 764, 768 n.7

Thus, the TTAB took the proper approach and considered the marks in their entirety before finding similarity of the marks. (A00040.) Indeed, the TTAB considered the substantial evidence of third party use of GEO- and –WEB, but still found no reason to dissect the marks. (A00039.) The TTAB recognized that, despite the widespread third party use of either GEO- or –WEB, "no third party has been shown to have adopted or used a mark as similar to opposer's marks (*i.e.*, having the combination of these terms) as is applicant's applied-for mark." (*Id.*) In other words, the myriad third party use of the terms GEO- and -WEB only serves to highlight the unlimited alternatives available to PRS and that no other party selected a mark containing both those terms in a nearly identical, rhyming mark for an identical product.

Furthermore, the TTAB explicitly considered the arguably common third party use of the –WEB portion of the mark, but found that whatever "arguable weakness" there might have been in 1984 when Presto adopted GEOWEB "for geocells in the form of plastic 'webbing,'" had been overcome by more than thirty years of

---

(Fed. Cir. 1985) ("Board decisions are, of course, not precedent in this court").

usage in the field. Accordingly, the TTAB accorded Presto's GEOWEB marks "the scope of protection to which they are rightly entitled." (*Id.*)

> **b.    The TTAB Properly Considered Evidence That The NEO- Prefix Creates, Rather Than Dispels, An Association Between The Marks**

PRS's fundamental and persistent argument on the difference between NEOWEB and GEOWEB is that the prefix NEO- suggests a product that is "new" or "different." That puzzling argument actually supports, rather than overcomes, the likelihood of confusion between the marks NEOWEB and GEOWEB when applied to identical goods.

PRS argues that the TTAB focused on the connotation of "new" but "did not recognize that the NEO- prefix also includes the connotation of 'different.'"" (PRS Br., 25.) However, the TTAB clearly articulated its understanding of PRS's argument that "NEO- means 'new' *or 'revised.'*" (A00041; A00049) (emphasis added). And, the commercial impression of "new" or "revised" (or even PRS's formulation of "different") begs the same question that the TTAB resolved in favor of confusion – namely, "new," "revised" or

"different" compared to what? The TTAB considered the record and
found

> [W]e agree with opposer that prospective
> customers might well view "Neo-" as an
> intentional play on the word "Geo" – the more
> so inasmuch as *applicant consistently touts its
> NEOWEB product as a later generation of
> products that improves significantly upon
> GEOWEB products.* This combination of
> identical pronunciations and structure, and an
> almost intuitive connection to the earlier
> product is significant in this case, works to
> create a close association between the overall
> commercial impressions of the two marks used
> in a marketplace of legally identical, competing
> products.

(A00041) (emphasis added). This finding was supported by

substantial evidence. (A00336) (NEOWEB is an advancement from

"the previous generation of Geoweb®"); (A00276) (same); (A00324-

25; A00327) (NEOWEB is identical to GEOWEB); (A04380)

(testimony from PRS Chairman, Oded Erez, that NEOWEB was not

just a name for new product, "but a reflection of the specifications

which are so different"); (A04485) (testimony from Erez, that

NEOWEB is "definitely" an advancement from GEOWEB, "[b]ut it is

basically the same, the same cellular confinement system.");

(A02928; A02931; A02936) ("formerly GEOWEB®").

Indeed, PRS founder and Chairman, Oded Erez, testified that PRS selected the name NEOWEB after a "lengthy process" involving a "committee" and several branding companies to consider "hundreds of ideas" many of which contained "GEO-." (A04380-4384; A04465-66; A00264-266; A00267-271.) PRS could have chosen NEOCELL or NEOGRID or any other "NEO-" mark. (A04464-65; A04477.) Yet, PRS chose the NEOWEB name because it wanted to differentiate the new *product* from the "GEOWEB that *we were using*" and to "still refer to what *we* are." (A04383; A04478) (emphasis added). It is clear that PRS desired to maintain some connection to the same *product* it had been selling for years.

### 3. PRS's Marketing Statement "Formerly GEOWEB" Does Not Dispel Confusion As To Source, Affiliation Or Sponsorship

PRS's final argument against similarity is that, in use, PRS is able to dispel confusion by marketing its NEOWEB products as "formerly GEOWEB." Notably, PRS's use in the marketplace is irrelevant for purposes of the opposition because, in an opposition, likelihood of confusion is assessed against the mark as applied for. *See Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1233 (Fed. Cir. 2005) (reciting rule that "in Board

proceedings, likelihood of confusion is determined independent of the context of actual usage"). However, even if PRS's actual usage of NEOWEB with its purported disclaimer, "formerly GEOWEB" were considered, it would still support a finding of likelihood of confusion.

PRS argues that "formerly GEOWEB" negates any confusing similarity of the marks because it amounts to no more than "comparative advertising," and that "the phrase 'formerly' has been held to reduce likelihood of confusion between a new source and an old source." (PRS Br., 27.) Neither argument has merit.

*First*, PRS cites no case law in support of its assertion that "formerly GEOWEB" amounts to comparative advertising. Such an argument would fall into the category of the doctrine of "nominative fair use," and PRS points to no authority of this Court *ever* accepting that argument as a defense in an opposition proceeding. The reason is obvious – nominative fair use (*i.e.*, use of trademark nominatively for purposes of a fair comparison or identification) is a defense to infringement, and therefore depends on actual use in commerce. *See, e.g., New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (identifying three part test for

22

affirmative defense of "nominative fair use"). However, such use
would be irrelevant to an opposition proceeding, which depends
only on the mark as applied for. *Mayer/Berkshire*, 424 F.3d at 1233
(distinguishing infringement actions and oppositions).

    *Second*, PRS's citation to *Kassbaum v. Steppenwolf Prods.,
Inc.*, 236 F.3d 487 (9th Cir. 2000), is unavailing. There, the use of
"formerly" was specifically to describe a difference of source, *i.e.*,
"formerly *of* Steppenwolf." In this case, PRS does not differentiate
the *source*. Instead, it differentiates the *product*. There is a
significant difference in message between "formerly *of* Steppenwolf"
and "formerly Steppenwolf." One indicates that the product (or
performer or service) is presently derived from a former source (*i.e.*,
"formerly *of* Steppenwolf"). The other indicates that the product
itself (or performer or service) is the same but simply renamed (*i.e.*,
"formerly Steppenwolf"). PRS's use of "formerly GEOWEB" is closer
to the latter.

    Even if "formerly GEOWEB" did indicate a different (rather
than merely renamed) product, a single source may reasonably be
expected to market different products – even products that are
improvements over existing ones. If such use led consumers to

believe the products originated from a different source, no marketer would ever call a product "new and improved," yet such claims are ubiquitous. Had PRS wanted to differentiate source, it might have instead said, "NEOWEB, from PRS, formerly a distributor and licensee of Presto's GEOWEB®." Instead, it chose to say merely, "NEOWEB, formerly GEOWEB®." Saying "formerly GEOWEB" does not indicate that NEOWEB comes from a different source than GEOWEB, only that the product itself is different. (A02880) (testimony from PRS Chairman Oded Erez that "It is saying that it is two different products."). PRS cites no authority that use of "formerly" in that context could obviate the clear similarity of the marks.

### B.  The Goods Described In The NEOWEB Application Are Legally Identical To Presto's GEOWEB Product (Second *DuPont* Factor)

Substantial evidence supports the TTAB's finding that the second *DuPont* factor favored a likelihood of confusion, *i.e.*, that the products at issue are legally identical. PRS counters that its NEOWEB products use an innovative polymer alloy that make its product superior to the polymer (*i.e.*, HDPE) used in Presto's GEOWEB product. *First*, PRS's argument is legally irrelevant

because the TTAB can look no further than the description of the

goods for the applied-for mark, which in this case make no mention

of PRS's new polymer. *Second*, even if some of PRS's actual goods

do *now* incorporate its advanced polymer technology, substantial

evidence supports PRS selling NEOWEB product made of standard

HDPE – identically to Presto's GEOWEB.

### 1.    PRS's Actual Product Formulation Is Irrelevant

PRS's contention that its actual product in the marketplace

should be considered under the second *DuPont* factor is erroneous,

and borderline frivolous. As this Court stated:

> The issue in an opposition is the right of an
> applicant to register the mark depicted in the
> application for the goods identified therein. *The
> authority is legion that the question of
> registrability of an applicant's mark must be
> decided on the basis of the identification of
> goods set forth in the application* regardless of
> what the record may reveal as to the particular
> nature of an applicant's goods, the particular
> channels of trade or the class of purchasers to
> which sales of the goods are directed.

*Octocom Sys., Inc. v. Houston Computer Sys., Inc.*, 918 F.2d 937,

942 (Fed. Cir. 1990) (emphasis added) (citing ten cases from this

Court and the Court of Customs and Patent Appeals). In fact, in

*Octocom*, the applicant's arguments were deemed frivolous and

sanctionable. *Id.* at 943-44. This Court pointedly criticized the applicant, OSI, for making "no attempt to distinguish its situation from the voluminous precedent or even to argue that the precedent was wrong and should be overturned. OSI simply ignored it. This court deems such advocacy to be unacceptable." *Id.* at 943 (awarding sanctions). Just so here, as PRS fails to cite a single case in support of this argument.

Thus, the TTAB properly considered the identification of good set forth in PRS's '825 application and compared that to the description of goods in Presto's GEOWEB registration, finding them legally identical (A00037) (emphasis added):

| NEOWEB ('825 application) | GEOWEB (Reg. No. 1,351,682) |
|---|---|
| Non metallic building materials, namely, three-dimensional polymeric cells, cellular confinement systems, and ***expandable plastic webbing sheets all for road base and for ground support used for construction of roads and for prevention of ground erosion***; plastic articles for reinforcing geotechnical-reinforced materials for use in building and construction; materials, namely, sand, gravel, crushed stone, graded aggregate, recycled asphalt, crushed concrete, native | road base and ground support plastic webbing sheets for building roads and preventing erosion of roads |

| | |
|---|---|
| soil, fly ash, quarry waste in the nature of fine crushed stone, earth, soil and concrete, earth and soil for use in road building and civil engineering construction; ***polymeric webbing, and sheets constructed from plastic, all for road base and ground support, for building roads and for civil engineering construction and for the prevention of erosion of roads and the like structures***; pavements and pavement materials, namely, sand, gravel, ballast, recycled concrete, recycled asphalt, crushed stone, quarry waste in the nature of fine crushed stone, earth, soil and concrete | |

The legal identity of the goods strongly supports a finding of likelihood of confusion. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992) (reversing dismissal of opposition where TTAB gave "insufficient weight to the use of these marks on identical services" explaining that the "second factor accentuates the likelihood of consumer confusion about the sources of services marketed under similar marks").

**2.    Even If PRS's "Superior Polymer" Argument Mattered, Substantial Evidence Exists To Show PRS Sold NEOWEB Identical To The GEOWEB Product**

PRS's argument that the goods are different fails for the independent reason that PRS actually marketed some NEOWEB product that it claimed was identical to GEOWEB (A02860; A03694; A03724; A03731; A04423-24), and sold cellular confinement systems under both the GEOWEB and NEOWEB brand names simultaneously during the transition to its supposedly new product. (A00321; A00324; A00327; A00330; A04379-80.) Accordingly, substantial evidence supports the legal identity of the goods.

**C.    Sophistication Of Purchasers (Fourth *DuPont* Factor) Is, At Best, Neutral In This Case**

The TTAB found that because of the expense of the products, highly technical nature of the products, and long lead time for product installation, that purchasers of the goods at issue would be highly sophisticated. (A00041-42.) This is the *sole* factor the TTAB found favored no likelihood of confusion. (A00042; A00044.)

While the TTAB was correct in its characterization of purchasers for NEOWEB and GEOWEB products, in this case, the sophistication of the purchasers is entitled to greatly diminished

28

weight. When the marks and goods are highly similar, even sophisticated purchasers can easily mistake the goods. *Wincharger Corp. v. Rinco, Inc.*, 297 F.2d 261, 264 (C.C.P.A. 1962) ("It is true that in most instances technicians would use the products of either party and they are a discriminating group of people but that does not eliminate the likelihood of purchaser confusion here. Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as similar as those here in issue, and cover merchandise in the same general field"); *see also Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 638 (6th Cir. 2002) (finding that despite high degree of care, significance was "minimal" and neither weighed for, or against, a likelihood of confusion because the marks were so similar); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 286 (6th Cir. 1997) (effect of purchaser care inversely related to similarity of goods). In this case, the high degree of similarity of the NEOWEB and GEOWEB marks dictates that this factor be given little or no weight.

### D.    The Wide Renown Of Presto's GEOWEB Mark (Fifth *DuPont* Factor) Supports A Likelihood Of Confusion

The TTAB determined that, "[b]ased on this entire record, there is no question but that opposer's GEOWEB marks have served as distinctive source indicators for its cellular confinement products for more than three decades." (A00038.) This statement is supported by substantial evidence. (A03886-88; A03896; A03891; A03970; A03204; A03274; A03291-93; A04554-85.)

PRS's brief dedicates nearly its entire argument on the Fifth *DuPont* Factor (commercial strength) to the GEOWEB mark's alleged descriptive nature, rather than its renown in the market. (PRS Br., 29-35.) Those arguments, however, are better directed to the sixth *DuPont* factor (conceptual strength), and are irrelevant to the present *DuPont* factor, which evaluates commercial strength of the mark.

The sole arguments PRS *does* make involve the admissibility of evidence that the TTAB ignored in any event, and a single quotation from a third party distributor taken grossly out of context. Concerning the evidence, PRS complains that Presto did not submit any admissible evidence as to its sales and market share that would

support a finding of commercial strength. (PRS Br., 32.) The TTAB agreed with that argument, but *still* identified other substantial evidence of the commercial strength of GEOWEB. (A00038-39.) Thus, PRS's argument in its brief is besides the point.

Concerning the third party testimony, PRS reads far too much into a portion of an answer in a lengthy deposition passage during a third party deposition that "the majority of customers had never heard of a geocell or GEOWEB." (PRS Br., 32.) PRS's cited answer was in response to a specific inquiry about one specific geographic location – Birmingham, Alabama. (A03756) ("Q: And do you know if the city of Birmingham, Alabama had familiarity with the Geoweb mark?"). In fact, the witness prefaced the entire discussion by clarifying that he was responding with a very limited focus on one particular customer. (*Id.*) ("A: Sure. I mean, do you want one? I know of a buyer. Q: Okay. A: The city of Birmingham, Alabama."). Thus, the single passage cited by PRS, when considered in its proper context, cannot bear all the weight PRS places on it.

In any event, PRS's main argument, hinging as it does on NEOWEB as the "new" and "different" GEOWEB, makes little sense unless GEOWEB had already attained commercial strength. Indeed,

PRS points to no evidence that, despite Presto's thirty years of use, the GEOWEB mark does not serve as a distinctive indicator of source. Its belief that NEOWEB means a "new" or "different" GEOWEB presumes that the relevant consumers in this industry readily recognize GEOWEB as a distinctive product, essentially admitting that GEOWEB is strongly associated with a source.[6]

### E.    Presto's Registered And Incontestable GEOWEB Trademark Has Conceptual Strength (Sixth *DuPont* Factor)

The TTAB properly found that, although there are third party uses of both GEO- and –WEB, "no third party has been shown to have adopted or used a mark as similar to opposer's marks (*i.e.,* having the combination of these terms) as is applicant's applied-for mark." (A00039.) PRS does not contest that statement, nor can it having provided no third party use of any other "-EOWEB" mark despite its submission of ample and exhaustive third party use of either GEO- or -WEB. Instead, PRS argues that GEOWEB is

---

[6]    Whether consumers would recognize that source as Presto is irrelevant. 15 U.S.C. § 1127 (a trademark is any mark used by a party "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, *even if that source is unknown.*") (emphasis added).

descriptive, intimating without support that it should be entitled to little or no strength at all. However, PRS never filed a counterclaim to cancel Presto's incontestable GEOWEB trademark, and as the TTAB properly observed, "absent a counterclaim to cancel these registrations, applicant cannot collaterally attack the validity of these registrations." (*Id.*); *Contour Chair-Lounge Co. v. Englander Co.*, 324 F.2d 186, 188 (C.C.P.A. 1963) ("this is an opposition only and in an opposition, this court has always held, the validity of the opposer's registrations are not open to attack"); *see also In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1408 (Fed. Cir. 1997) (attack on validity of registered mark can only be made in a cancellation proceeding). Moreover, an incontestable registration cannot be challenged on the basis of descriptiveness. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) ("Congress expressly provided in §§ 33(b) and 15 that an incontestable mark could be challenged on specified grounds, and the grounds identified by Congress do not include mere descriptiveness."). Here, substantial evidence supports the TTAB's finding that this factor favors a likelihood of confusion.

Even were the Court to consider PRS's improper collateral attack on Presto's GEOWEB trademarks, PRS's arguments would still fail. Substantial evidence – including testimony from PRS's own founder and Chairman, Oded Erez – supports a finding that GEOWEB is a suggestive mark, and therefore is conceptually strong.

This Court has identified certain guiding principles to distinguish between suggestive marks (which are inherently distinctive and therefore accorded broad protection), and descriptive marks (which require secondary meaning). "To determine if a mark is descriptive or suggestive, we look to 'how immediate and direct … the thought process [is] from the mark to the particular product.'" *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1342-43 (Fed. Cir. 2004) (citations omitted). A descriptive mark "define[s] qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." *Id.* at 1340. By contrast, a suggestive mark is "one for which 'a consumer must use imagination or any type of multistage reasoning to understand the mark's significance ... the

mark does not *describe* the product's features, but *suggests* them.'" *Id.* (citations omitted) (emphasis in original).

In this case, GEOWEB is suggestive. Though GEO- refers to "earth" or "soil," and –WEB evokes the shape of the product, GEOWEB does not describe a "web of earth." Rather, GEOWEB suggests a product that uses polymeric webbing to retain soil. The mark requires some "exercise of the imagination to be understood." *Id.* In other words, a consumer would necessarily use "multistage reasoning to understand the mark's significance." *See id.* at 1343 (finding BOWFLEX suggestive of exercise equipment that flexes or bends bow-like rods); *Polymer Corp. v. Dayco Corp.*, 324 F.2d 1019, 1020 (C.C.P.A. 1963) (NYLAFLEX and NYLAFLOW suggestive of flexible nylon hoses); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1533-34 (4th Cir. 1984) (UNO is suggestive of the "best" or "number one" pizza restaurant).

Additionally, substantial evidence supports the finding that GEOWEB is a suggestive mark. PRS founder and Chairman, Oded Erez, testified as to the suggestive nature of the mark. (A04313.) When asked whether "webbing" is "suggestive of the material itself," Mr. Erez answered, "It is a suggestion of the material when you

35

open it and create the webs." (*Id.*) Mr. Erez reinforced the suggestive

nature of the NEOWEB (and by direct implication, GEOWEB) mark

when asked why PRS did not adopt the name, NEOCELL:

> Q.    Okay. Also counsel asked you on cross
> that why didn't you use the mark Neocell.
> Do you recall that? So it would be I guess
> Neocell geocell?
>
> A.    Yeah, well, it – this is not what we wanted
> it to be. We wanted it to be – again, even
> though cells, geocell and the web is the
> same but the *webbing became as kind of
> an act that it is being used as a word
> already, not just as a cell, not just a
> descriptive, but more than that*, of the
> whole, whole work of it, setting it up,
> putting it up together. And so we believe
> that it is a nicer combination, but maybe
> we are wrong, I do not know. People were
> involved, committee was sitting, and this
> is what we liked.
>
> Q:    Is it more suggestive of what a cell is?
>
> A:    *It is more suggestive in the sense of what
> is being involved in the whole operation,
> yes.*

(A04526-27) (emphasis added).

Indeed, when asked directly, "What does a cellular

confinement system look like?," Mr. Erez described it as "beehive"

or "honeycomb" – never mentioning the word "web." (A04190-91.)

Accordingly, substantial evidence supports the TTAB's conclusion that GEOWEB has sufficient conceptual strength to favor a likelihood of confusion.

### F.   Evidence Of Actual Confusion (Seventh *DuPont* Factor) Also Supports A Likelihood Of Confusion

Although not addressed in the TTAB's decision, and not required for a finding of likelihood of confusion, PRS curiously raises evidence of actual confusion in the marketplace, but attempts to discount that evidence.

PRS cites to an e-mail (A02970-71) inquiring as to the relationship among PRS, Presto, NEOWEB and GEOWEB. The e-mail states:

> We are a company which is doing well in the ground and infrastructure stabilization. We are familiar with NeoWeb from PRS, and we assumed that neoweb was the next generation Geocell material, based on GEOWEB.
> Can you clarify this to me?
> -Is there a relation between PRS and Presto;
> -Difference between GEOWEB and Neoweb

(*Id.*)

PRS first argues that the e-mail is inadmissible hearsay, despite having stipulated to its admissibility. PRS next argues,

based on a fundamental misunderstanding of the Lanham Act, that the e-mail does not show confusion. Both arguments fail.

### 1. PRS Stipulated To The Admissibility Of The E-mail And Therefore Waived Its Hearsay Objection

PRS's first argument concerning this evidence is that it is inadmissible hearsay. PRS waived that argument before the TTAB, and it is improper to raise it here. The e-mail was an exhibit to an affidavit of Presto employee, Patricia Stelter, in a parallel Canadian action (Bates number NEO 003640-41). (*Id.*) Pursuant to a stipulation of the parties before the TTAB, PRS and Presto stipulated: "That affidavit of Patricia Stelter, dated February 14, 2011, and all exhibits annexed to the Affidavit, which documents are labeled NEO003597-3641, be deemed admissible by Notice of Reliance, as agreed to by the Parties." (A04916.) The Notice of Reliance was made part of the record below, and relied upon by the TTAB. (A00020-21.) Further, PRS stipulated "to the authenticity and the admissibility of the specific documents addressed above," and reserved objections only on "competency, relevance and materiality." (A04916.) Hence, PRS's hearsay objection was waived. *Blodgett v. Commissioner of Internal Revenue*, 394 F.3d 1030, 1040

(8th Cir. 2005) (stipulation as to authenticity and admissibility, even while reserving on accuracy, relevancy or materiality, waived any hearsay objection and thus forfeited any right even to appellate plain error review); *see also U.S. v. Mezzanatto*, 513 U.S. 196, 202 (1995) ("Absent some 'overriding procedural consideration that prevents enforcement of the contract,' courts have held that agreements to waive evidentiary rules are generally enforceable even over a party's subsequent objections.") (citations omitted).

Even if PRS had not waived its hearsay objection through its stipulation, and even if the TTAB had considered PRS's belated hearsay objection (*i.e.*, when PRS made the same belated hearsay objection it makes here in its trial brief to TTAB), that objection was overruled by the TTAB. The TTAB explicitly stated, "we have considered the entire record in making our decision, keeping in mind the parties' various objections, and have consistently accorded whatever probative value the subject testimony and evidence merit." (A00019.) PRS has failed to make any argument that the TTAB's evidentiary ruling was an abuse of discretion. *See*

*Coach Services, Inc.*, 668 F.36 at 1363 (TTAB evidentiary rulings reviewed for abuse of discretion).[7]

### 2.    The E-Mail Demonstrates Actual Confusion As Defined In The Lanham Act

Turning to the merits, PRS argues that "actual confusion would require the writer of the email to believe that NEOWEB geocells are produced by Presto, or that GEOWEB geocells are produced by PRS." (PRS Br., 37.) PRS cites no authority for that proposition, and it is plainly contrary to the law.

The Lanham Act, § 1052(d), prohibits registration of a mark that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). "[T]he test of 'likelihood of confusion' encompasses any type of confusion, including: confusion of source;

---

[7]    Even were it to be considered, PRS hardly develops its hearsay objection, and in any event it is without merit. PRS merely argues that the e-mail "contains no indicia of reliability, such as the writer's identity." (PRS Br., 38.) Although the *actual name* of the sender was redacted for confidentiality reasons, the e-mail certainly did contain the writer's identity in its original form. PRS does not allege that it was prevented from discovering the writer's identity through discovery, instead apparently sticking its head in the sand to argue unreliability here. In any event, the TTAB found likelihood of confusion without explicitly mentioning the e-mail. Should this Court discount this evidence of actual confusion on hearsay or any other grounds, the outcome of the balancing of the *DuPont* factors would be the same.

confusion of sponsorship; confusion of affiliation; or confusion of connection." 4 McCarthy on Trademarks and Unfair Competition § 24:6 (4th ed. 2014); *see* 15 U.S.C. § 1125(a)(1)(A) (infringement when a mark is "likely to cause confusion, or to cause mistake, or to deceive *as to the affiliation, connection, or association* of such person," *or* "*as to the origin, sponsorship, or approval*" of the goods) (emphasis added); *In re Shell Oil Co.*, 992 F.2d 1204, 1207 (Fed. Cir. 1993) (§ 1052(d) encompasses confusion as to source *or* sponsorship); *Sterling Drug, Inc. v. Sebring*, 515 F.2d 1128, 1132 (C.C.P.A. 1975) (same).

Even if (as PRS suggests) there was no confusion as to source, the e-mail above does suggest confusion as to sponsorship or affiliation. Indeed, the very statement, "we assumed that the neoweb was the next generation Geocell, based on GEOWEB" indicates an assumption (and therefore confusion) as to affiliation. Moreover, the request to "clarify" is a straightforward request to alleviate confusion as to whether there is "a relation between PRS and Presto." One does not ask to clarify something unless he is confused by it.

41

Finally, even if PRS is entirely correct that there was no actual confusion on the record, the absence of actual confusion would still not help PRS. *J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 986 (C.C.P.A. 1965) ("Appellant urges that the long concurrent use of the marks by the parties, without proof of actual confusion, supports a conclusion of no likelihood of confusion. The ultimate consideration, however, is likelihood of confusion. Absence of proof of actual confusion is of minor relevancy in the resolution of the issue.").

Accordingly, should this Court consider the evidence of actual confusion, this factor would also support likelihood of confusion between NEOWEB and GEOWEB.

## III.   Upon Balancing The Relevant *DuPont* Factors, This Court Should Find A Likelihood Of Confusion And Affirm The TTAB

The TTAB considered *DuPont* factors One (similarity of the marks), Two (similarity of the goods), Three (similarity of the channels of trade), Four (sophistication of purchasers), Five (renown of the GEOWEB mark, or commercial strength), and Six (nature of the GEOWEB mark, or conceptual strength). PRS has not contested the third *DuPont* factor, but introduced evidence on factor Thirteen,

the lack of bad faith (which the TTAB did not consider relevant), and factor Seven, actual confusion (which the TTAB never considered, but which evidence actually supports Presto). PRS did not contest any other *DuPont* factor, nor claim that any other *DuPont* factor was relevant but missed by the TTAB.

Substantial evidence supports the TTAB's findings that the following *DuPont* factors favor a likelihood of confusion: One (similarity of the marks), Two (similarity of the goods), Three (similarity of the channels of trade), Five (renown of the GEOWEB mark, or commercial strength), and Six (nature of the GEOWEB mark, or conceptual strength). Additionally, although not considered by the TTAB, substantial evidence on factor Seven (actual confusion) also supports Presto.

In contrast, the TTAB found only factor Four (sophistication of purchasers) to weigh against a likelihood of confusion. However, this Court's precedent dictates that that factor has minimal, if any, significance here because of the overwhelming similarity of the marks NEOWEB and GEOWEB.

PRS does not argue anywhere in its brief how this Court should balance the above factors *de novo* – even those it claims the

TTAB got wrong. PRS merely reargues the evidence. The reasons are obvious. Given the deference owed to the TTAB on its factual findings, all PRS could reasonably ask this Court to do is give more weight to the factors which were, at best, inconclusive: factor Four (sophistication of purchasers) and factor Seven (actual confusion). Sophistication of the purchasers, however, is entitled to little weight here given the similarity of the marks, channels, and goods. *See Wincharger*, 297 F.2d at 264; *see also Therma-Scan*, 295 F.3d at 638; *Daddy's*, 109 F.3d at 286. And, the lack of actual confusion (giving PRS the benefit of the doubt on that factor) is "of minor relevancy in the resolution of the issue." *J.C. Hall*, 340 F.2d at 986.

Even if the one factor arguably in PRS's favor did weigh against confusion (*i.e.*, sophistication of purchasers), PRS has not argued that single factor is enough to outweigh the others. While this Court has held *dissimilarity* of the marks (factor One) enough to outweigh all other factors,[8] it has never found sophistication of purchasers alone to be sufficient to avoid confusion. If

---

[8]    *See, e.g., Champagne Louis Roerder, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998) (dissimilarity of the marks alone dispositive); *Kellogg Co. v. Pack'em Enters., Inc.*, 951 F.2d 330, 333 (Fed. Cir. 1991) (same).

sophistication of purchasers could *ever* be sufficient on its own to avoid confusion – notwithstanding any other factor – then no market in which there were sophisticated purchasers could *ever* have a trademarked product, regardless of similarity of the marks, commercial or conceptual strength. Such a finding would eliminate valuable brands in all kinds of expensive goods with highly discerning purchasers, *e.g.*, luxury automobiles. That result is obviously not the law.

Given the overwhelming weight of the *DuPont* factors in favor of Presto, each of which is supported by substantial evidence, this Court's *de novo* balancing of those factors should arrive at the same conclusion as the TTAB. NEOWEB is confusingly similar to GEOWEB, and registration was properly denied.

## CONCLUSION

The TTAB found nearly every relevant *DuPont* factor to favor a likelihood of confusion, and each of those findings was supported by substantial evidence and the law. PRS's arguments to the contrary either fail to address the relevant evidence in the record, argue matters that have no bearing on the ultimate conclusion, or are simply inconsistent with the law. To the extent PRS is also

appealing the TTAB's decision on the motion for reconsideration, there has certainly been no abuse of discretion, nor has PRS raised any such argument. There is no basis for this Court to upset the careful work of the TTAB in denying registration for NEOWEB, and the TTAB's decision should be affirmed.

Respectfully submitted,

/s/ Daniel H. Shulman
Daniel H. Shulman
REYNOLDS GROUP HOLDINGS LTD.
1900 West Field Court
Lake Forest, IL 60045
(847) 482-2587
dshulman@pactiv.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 29th day of August, 2014, I electronically filed the Brief of Appellee with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Richard M. Klein
> FAY SHARPE, LLP
> 1228 Euclid Avenue
> The Halle Building
> 5th Floor
> Cleveland, OH  44115
> (216) 363-9000
>
> *Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

**CERTIFICATE OF COMPLIANCE**
With Type-Volume Limitation, Typeface Requirements,
And Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>8,765</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Bookman Old Style</u>.

August 29, 2014          /s/ Daniel H. Shulman
                         Daniel H. Shulman
                         REYNOLDS GROUP HOLDINGS LTD.
                         1900 West Field Court
                         Lake Forest, IL 60045
                         (847) 482-2587
                         dshulman@pactiv.com

                         *Counsel for Appellee*